# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-KA-01744-SCT

*JERMAINE REED*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/2011 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE MCMILLIN |
| | JERMAINE REED - PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/25/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Following a jury trial in the Circuit Court of Hinds County on July 18-20, 2011, Jermaine Reed was convicted of aggravated assault of his ex-girlfriend, Andrea Taylor. As Reed was adjudicated a violent habitual offender pursuant to Mississippi Code Section 99-19-83, upon application of that sentence enhancement, he was sentenced to life without the possibility of parole. On appeal, Reed challenges his conviction and sentence. Appellate counsel filed a ***Lindsey*** brief certifying to this Court that, after a diligent review, there were

no appealable issues in the record.[1] Reed has filed a *pro se* brief assigning error to both the trial court and his trial counsel.

## FACTS AND PROCEDURAL HISTORY

¶2.     Jermaine Reed is no stranger to the criminal justice system. In 2000, Reed pleaded guilty to motor vehicle theft in the Circuit Court of Hinds County (Cause Number 99-1-410-00). He was sentenced to one year in the custody of the Mississippi Department of Corrections (MDOC), but his sentence was suspended, and he was placed on supervised probation. However, on June 28, 2002, an order of revocation was entered by the circuit court, and Reed was ordered to serve five months. In 2003, Reed pleaded guilty to possession of cocaine in the Circuit Court of Hinds County (Cause Number 03-0-545-00BBD). He was sentenced to eight years, with six years suspended and two years to serve.

¶3.     On May 26, 2008, the day giving rise to Reed's current run-in with the law, Andrea Taylor and her aunt were walking to their home on Brown Street, in Jackson, when Taylor's aunt noticed Reed walking behind them. Upon realizing that Reed was carrying a weapon, Taylor fled to a nearby house. She was unable to gain entry to the house and was rendered helpless on the porch.[2] Reed pursued Taylor onto the porch, and, in her efforts to avoid him,

---

[1]***Lindsey v. State***, 939 So. 2d 743, 748 (Miss. 2005) (implementing procedures governing cases where appellate counsel represents an indigent defendant and does not believe the client's case presents any issues on appeal).

[2]According to Taylor, she and Reed recently had broken up. Following their break-up, Reed had sent Taylor threatening voice and text messages. The messages had become so threatening that Taylor reported Reed to the police the weekend prior to the assault.

Taylor fell off the porch to the ground. While she was in a defenseless position, Reed repeatedly struck Taylor with what she described as a "long knife, a machete." A neighbor observed the horrific attack and went after Reed with a stick. In response to the intervention, Reed stopped his assault and fled the scene. After police arrived, Taylor was transported to University Medical Center where she was treated for severe injuries, some of which resulted in exposed bone on several areas of her body. Taylor spent approximately three weeks in the hospital and underwent multiple surgeries.

¶4. Nine days later, on June 4, 2008, Reed robbed a bank in north Mississippi. The history of that conviction overlaps with the case *sub judice* and will be discussed *infra*.

¶5. On June 27, 2008, Reed was indicted for "unlawfully and purposely or knowingly caus[ing] serious bodily injury to . . . Andrea Taylor, by then and there cutting her about the body with a machete, causing bodily injury." *See* Miss. Code Ann. § 97-3-7(2) (Rev. 2006). At his arraignment on July 28, 2008, Reed pleaded "not guilty," and a trial date was set for November 17, 2008. On July 31, 2008, the State filed a "Motion to Amend Indictment to Enhance Punishment," which sought to "charge [Reed] as an habitual offender pursuant to Section 99-19-81. . . ."[3]

¶6. Although set for November 17, 2008, the trial did not proceed. The record reveals that the case was continued on December 3, 2008. Reed's trial counsel stated in a subsequent hearing that the case was continued on the "basis of . . . crowded docket."

---

[3] *See supra* ¶ 2 for a detailed discussion of Reed's prior felonies.

¶7. Following the continuance, on December 8, 2008, Reed's first trial counsel filed a "Motion for Mental Examination and/or Treatment." The case had been reset for trial on February 2, 2009. However, this motion was never pursued, and, on February 18, 2009, the circuit court entered a "Scheduling Order" which set a plea deadline of March 30, 2009.[4]

¶8. In the interim, Reed was taken into federal custody on the bank-robbery charge. He pleaded guilty to bank robbery and, on July 23, 2009, was sentenced to fifty-seven months.[5] He remained in federal custody until early July 2011, when he was transferred back to the custody of Hinds County to face trial for the aggravated assault of Taylor.

¶9. On July 15, 2011, the State filed a second "Motion to Amend Indictment to Enhance Punishment," which sought "to charge [Reed] as an habitual offender pursuant to . . . [Section] 99-19-83," on the grounds that "[Reed was previously] convicted of the felony crime of [p]ossession of [c]ocaine in Cause Number [20]03-0-545 . . . [and] the violent

---

[4]The "Scheduling Order" stated that the case had not been tried on February 2, 2009, "as numerous cases were set for trial [that day], and this case being one that was not called."

[5] A review of the docket in that case reveals no motions regarding Reed's competency to stand trial or to enter a guilty plea. *See* Docket for No. 2:08CR00125-001*,* http://www.pacer.gov/ (last visited July 19, 2013).

felony crime of [b]ank [r]obbery in Case Number 2:08CR00125-001.[6]" The circuit court deferred ruling on the motion until sentencing.

¶10. On July 18, 2011, the trial commenced, without assertions of incompetency to stand trial. Reed was convicted by the jury of aggravated assault. Subsequently, the circuit court granted the State's second motion to amend, and, after hearing, Reed was sentenced as an habitual offender to life without parole.

## ISSUES

¶11. Reed raises the following issues:

(1) Ineffective assistance of counsel through pretrial, trial, and sentencing
(2) Denial of a mental health examination before his trial
(3)The State sought to amend Reed's indictment due to prosecutorial vindictiveness.

## ANALYSIS

### I. Ineffective assistance of counsel through pretrial, trial, and sentencing

¶12. This Court has stated that "[o]rdinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings . . . ." ***Blanchard v. State***,

---

[6]As previously mentioned, Reed pleaded guilty to possession of cocaine in the Circuit Court of Hinds County. *See supra* ¶ 2. Reed was sentenced to eight years in the custody of the Mississippi Department of Corrections, with six years suspended, and two years to serve. Reed's pen pack reveals that he accordingly served the statutory period.

On July 23, 2009, a criminal judgment was entered against Reed after he pleaded guilty to bank robbery in the United States District Court for the Northern District of Mississippi (Case Number 2:08CR00125-001). Bank robbery is a violent crime. 18 U.S.C. § 2113(a) (2006). Reed was sentenced to fifty-seven months in the custody of the United States Bureau of Prisons. He was released to the custody of Hinds County just days before his trial in July 2011.

55 So. 3d 1074, 1078-79 (Miss. 2011) (quoting *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). Reed maintains that "counsel was ineffective . . . [because] he . . .[(1)] [did] not advis[e] [Reed] of the legal rule under . . . Miss. Code Ann. 97-3-7 (2)(b)[,] . . . [(2)] did[] [not] investigate . . . [Reed's] claims nor consult with [Reed] to come up with a defense or strategy[,] . . . [(3)] ineffective concerning . . . [Reed's] speedy trial violation[,] . . . and [(4)] fail[ed] to object to the amendments of the indictment." Both parties stipulate that the record does not contain sufficient evidence to evaluate these claims. As such, Reed's ineffective-assistance-of-counsel claims are dismissed without prejudice to raise later in a post-conviction-relief claim. *See Parker v. State*, 30 So. 3d 1222, 1232 (Miss. 2010) (citing *Archer*, 986 So. 2d at 955).

## II.    Denial of a mental health examination before Reed's trial

¶13.    Reed contends that the "[t]he [trial] court erred in not granting . . . a mental examination." After his first trial date was continued, Reed's first trial counsel filed a "Motion for Mental Examination and/or Treatment" on December 8, 2008. As previously mentioned, the case was reset for trial on February 3, 2009, but Reed did not pursue the motion before that date. More than two years later, Reed's second trial counsel did not renew, pursue, or file a new motion prior to trial. This Court has stated, "[i]t is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of the same." *Berry v. State*, 728 So. 2d 568, 570 (Miss. 1999) (quoting *Martin v. State*, 354 So. 2d 1114, 1119 (Miss. 1978)); *see also* URCCC 2.04 ("Failure to pursue a pretrial motion to hearing and decision before trial is deemed an

6

abandonment of that motion.") Reed's failure to pursue his motion bars this issue from consideration.

¶14.  Notwithstanding the procedural bar, we address whether the circuit court erred by not, *sua sponte*, ordering a mental-competency examination. Uniform Circuit and County Court Rule 9.06 provides, in pertinent part, "[i]f before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination . . . ." URCCC 9.06. The rule specifically provides that a trial court must order a competency hearing only if it "has reasonable ground" for doing so. This Court has stated,

> [t]he determination of whether there are reasonable grounds for a competency test is discretionary with the court. The test for competency to stand trial and thereby whether reasonable grounds exist is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.

*Parker*, 30 So. 3d at 1230 (internal citations omitted).

¶15.  Reed conflates competency to stand trial with a defense related to mental incapacity at the time of the crime, *e.g.*, defense of insanity. *See* URCCC 9.07. Reed contends that "the facts of the case clearly show that [he] was suffering from some kind of mental illness[] *at the time of the aggravated assault* . . . ." This argument is flawed, as it raises an issue of Reed's competence at the time of the offense, not at the time of the trial as required by the rule. *See* URCCC 9.06; *Parker*, 30 So. 3d at 1230-31 ("Since Parker avers . . . that he was allegedly incompetent at the time of the crime, an insanity defense would have been more

7

appropriate."). Neither Reed nor the record provides any support that, at the time of the 2011 trial, "reasonable ground" existed for the circuit court to order a mental-competency examination. Therefore, this issue is without merit.

### III. The State sought to amend Reed's indictment due to prosecutorial vindictiveness.

¶16.    Reed asserts that the State sought to amend his indictment to enhance punishment as a result of prosecutorial vindictiveness and claims the circuit court erred in granting the amendment. This assertion is made for the first time in this appeal. Reed never pleaded nor argued prosecutorial vindictiveness before the trial court. Because this issue was not raised before the trial court, it is waived. *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730 (Miss. 1989) ("A trial judge will not be put in error on a matter which was not presented to him for his decision.")

¶17.    Notwithstanding the procedural bar, we will address Reed's claim as assigned. "The doctrine of prosecutorial vindictiveness 'precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution.'" *Russell v. State*, 79 So. 3d 529, 539 (Miss. Ct. App. 2011) (quoting *Garlotte v. State*, 915 So. 2d 460, 467 (Miss. Ct. App. 2005)). "Where there is a 'reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority,' there is a presumption of prosecutorial vindictiveness." *Russell*, 79 So. 3d at 539 (quoting *Moore v. State*, 938 So. 2d 1254, 1264 (Miss. Ct. App. 2006)).

"However, when no such likelihood exists, it is the defendant's burden to prove actual vindictiveness." *Id*. (quoting *Moore*, 938 So. 2d at 1264).

¶18.    Reed's claim is a bare allegation that the "State [sought] harsher penalties . . . because [he] invoke[d] his right to a speedy trial." Reed has provided no support for this claim. *See Busick v. State*, 906 So. 2d 846, 861 (Miss. Ct. App. 2005) ("For the presumption to arise, the evidence must establish a reasonable likelihood of vindictiveness."). Standing alone, the fact that the State sought a harsher penalty does not prove a claim of prosecutorial vindictiveness. *See U.S. v. Goodwin*, 457 U.S. 368, 372-73, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) ("The imposition of punishment is the very purpose of virtually all criminal proceedings.").

## CONCLUSION

¶19.    Based on this analysis, we affirm Reed's conviction and sentence.

¶20.    **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF LIFE IMPRISONMENT, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE SHALL NOT BE REDUCED OR SUSPENDED; NOR SHALL APPELLANT BE ELIGIBLE FOR PAROLE OR PROBATION.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**